UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:13-CR-005 JD |
| | ) | |
| JONATHAN PARAHAMS, JR. (01) | ) | |

## **OPINION AND ORDER**

This matter is before the court on defendant Jonathan Parahams's motion for judicial review of the detention order handed down by Magistrate Judge Nuechterlein on January 24, 2013, and as amended on January 25, 2013. [DE 31; DE 36]. The indictment [DE 1] charges Parahams and certain others with a conspiracy to defraud the United States by obtaining or aiding to obtain the payment or allowance of false, fictitious and fraudulent claims, in violation of 18 U.S.C. § 286. Specifically, the defendants are charged with obtaining over $3.5 million in tax refunds from the IRS, of which the government estimates about $2.5 million were fraudulent and obtained at an illegal loss to the government. At the detention hearing, the government argued for detention, and the defense argued for release. Judge Nuechterlein ordered Parahams detained as a flight risk, and on February 13, 2013, Parahams asked this Court for a review. [DE 40]. The government responded [DE 42], and on February 21, 2013, this Court held a hearing on the matter. [DE 43]. Having taken the motion under advisement for a *de novo* review, the Court now denies the motion. Parahams will remain in custody pending trial.

## **DISCUSSION**

18 U.S.C. § 3145(b) permits a defendant to file a motion seeking review or revocation of a detention order when the defendant has been "ordered detained by a magistrate judge, or by a person

1

other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court[.]" Section 3145(b) does not require that new evidence or information be available before a detention order can be reconsidered and revoked, *id.*, and "[t]he standard of review for the district court's review of a magistrate judge's detention . . . order . . . is *de novo*." *United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th Cir. 2003). "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992); *see also United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985); *United States v. Sallay*, 2011 WL 1344288 at *4 (N.D. Ind. April 8, 2011); *United States v. Stephens*, 2007 WL 2164248 at *3 (N.D. Ind. July 25, 2007); *United States v. Boxley*, 2007 WL 79176 at *1 (N.D. Ind. Jan. 8, 2007); *United States v. McManus*, 2006 WL 3833314 at *1 (N.D. Ind. Dec. 5, 2006). A district court may review a magistrate's detention order without holding a new hearing. *United States v. Bergner*, 800 F.Supp. 659 (N.D. Ind. 1992) (citing *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987); *United States v. Phillips*, 732 F.Supp. 255, 259 (D.Mass. 1990)). "An evidentiary hearing is necessary only if the party requesting the hearing raises a significant disputed factual issue." *United States v. Sophie*, 900 F.2d 1064, 1070 (7th Cir. 1990). An evidentiary hearing was warranted in this case; not only did it provide the parties an opportunity to discuss legal authorities which were cited in the defendant's brief but not discussed thoroughly at the previous hearing, it gave the defense the opportunity to submit two additional exhibits.

The Bail Reform Act ("BRA") limits the circumstances under which a district court may order pretrial detention. *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). "When a

motion for pretrial detention is made, the court engages in a two-step analysis: first, the judicial officer determines whether one of ten conditions[1] exists for considering a defendant for pretrial detention; second, after a hearing, the judicial officer determines whether the standard for pretrial detention is met." *United States v. Thomas*, 2011 WL 5386773 at *3 (S.D. Ind. Nov. 7, 2011) (citing *Friedman*, 837 F.2d at 49). In this case, both steps of the inquiry are satisfied, and Parahams must be detained because no condition or combination of conditions can reasonably assure his appearance in Court as required.

A.   *Step one: whether one of the conditions for considering the defendant for pretrial detention is met.*

The possible prerequisites for holding a detention hearing are divided into two categories. The first category, found at 18 U.S.C. § 3142(f)(1), essentially lists certain types of offenses according to their statute in the United States Code. *See Thomas*, 2011 WL 5386773 at *3; 18 U.S.C. § 3142(f)(1)(A)-(E). All parties agree that the offense Parahams is alleged to have committed does not fall under subsection (f)(1). That leaves the second category of possible prerequisites, subsection (f)(2). Subsection (f)(2) empowers the Court to hold a detention hearing, either on motion of the government or *sua sponte*, in any case (regardless of the offense charged) in which there is a serious risk that the defendant will flee, *see* § 3142(f)(2)(A), or in which there is a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. *See* § 3142(f)(2)(B); *United States v. Chavez-Rivas*, 536 F.Supp.2d 962, 966 (E.D.Wis. 2008). The government has not argued potential

---

[1] Different courts number the conditions differently. As cited here, the Southern District of Indiana breaks them down into ten distinct conditions. The Eastern District of Wisconsin, on the other hand, has counted them as six. *United States v. Chavez-Rivas*, 536 F.Supp.2d 962, 966 (E.D.Wis. 2008). The Second Circuit simplifies it to "enumerated crimes," "flight risk," and "obstruction of justice." *Friedman*, 837 F.2d at 49. In any case, the numbering does not matter; they are all referring to the same statutory subsections.

obstruction of justice or witness tampering, so the Court's authority to consider detention in this case must derive from subsection (f)(2)(A), concerning flight risk.

In order to consider a defendant for detention based on the risk of flight under subsection (f)(2)(A), the Court must find that risk to be present by a preponderance of the evidence. *Friedman*, 837 F.2d at 49. That burden is met in this case. Parahams has an extensive criminal record. He has been convicted of criminal offenses on fifteen separate occasions since turning 18. Two of those convictions are for felonies, with several other felonies charged but dismissed as part of plea bargains. Four times, his probation has been revoked for committing other offenses while on probation. One additional time, a petition for revocation was filed but no action was taken. Currently, he has yet another outstanding petition for revocation on file, once again for committing another offense while on probation. [Defense Exhibit A]. On at least one occasion, a warrant was issued after Parahams failed to appear in court. This dismal supervision history is entirely related to state charges, for which Parahams never faced substantial prison time. Based on a rough calculation, relying on Parahams's criminal history as listed in the PTS report and on the alleged loss amount, he is looking at a guidelines sentencing range of *at least* 151-188 months' imprisonment, and possibly more. The statute caps the penalty at ten years, *see* 18 U.S.C. § 286, and given the anticipated advisory guideline range, Parahams could receive that entire ten years if convicted. Given that he was noncompliant with court dates and supervision when he faced less substantial state penalties in past cases, the Court has concerns that he is not likely to be compliant here, where much more is on the line.

On top of that motive to flee, and on top of Parahams's demonstrated lack of respect for the law, including the terms of court supervision, he may have the means to disappear. During the

hearing before Judge Nuechterlein, the government noted that this investigation began when Parahams suddenly withdrew almost $500,000.00 from a bank account, a transaction which drew the bank's attention. From the evidence currently available, it does not seem that the money in question has been recovered. If that is true, Parahams appears financially equipped to abscond. The facts and circumstances of this case convince the Court that Parahams is a flight risk.

B.  *Step two: determining whether the standard for pretrial detention is met.*

Since the Court has found a valid reason to consider pretrial detention under subsection (f), the next question is whether the standard for pretrial detention, found at subsection (e), is met. Under that standard, "[p]retrial detention is allowed only after the court . . . finds that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Miller v. Hastings*, 87 Fed. Appx. 585, 586 (7th Cir. 2004) (citing 18 U.S.C. § 3142(e)). Ordinarily, detention may be based on a showing of either dangerousness or risk of flight; proof of both is not required. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). The defendant takes issue with that proposition on the facts of this case, however, and argues that detention may only be based on risk of flight, since risk of flight was the only subsection (f) factor that allowed the Court to consider detention in the first place.

There is some authority for the defendant's argument. In *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988), the First Circuit claimed it was following the Third Circuit in holding that where there is no contention that any of the subsection (f)(1) conditions are met, "pre-trial detention *solely* on the ground of dangerousness to another person or to the community is not authorized." *Id*. at 12 (emphasis added) (citing *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986)). The Seventh Circuit has not considered the question dealt with in *Ploof*, and district courts around the country have

5

applied it in different ways. *Contrast Chavez-Rivas*, 536 F.Supp.2d 962 (holding that detention in a subsection (f)(2)(A) case cannot be based on danger to the community) *with United States v. Holmes*, 438 F.Supp.2d 1340, 1348-50 (S.D.Fla. 2005) (holding that the subsection (f) conditions are only prerequisites for holding a hearing, and that once a hearing is held under *any* valid subsection (f) basis, a court is free to consider both subsection (e) reasons for detention); *United States v. Montoya*, 486 F.Supp.2d 996, 1004-05 (D.Ariz. 2007) (same). In short, it is an open question, but it is one that this Court need not answer, because this Court finds that "no condition or reasonable combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e). And it is important to again note that the magistrate judge detained the defendant as a flight risk as well.

With respect to reasonably assuring the appearance of the defendant, the United States bears the burden of proof by a preponderance of the evidence. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985); *United States v. Liebowitz*, 652 F.Supp. 591, 596 (N.D. Ind. 1987). The Court's consideration of the issues is guided by the statutory factors, listed at 18 U.S.C. § 3142(g):

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning –
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the

community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

Factor (g)(1), concerning the nature and circumstances of the offense charged, does not seem applicable to the present question, as it pertains mostly to enumerated offenses. But factor (g)(2) does. The weight of the evidence against Parahams is considerable. The government has recordings of a post-arrest confession made by Parahams to the IRS, after he was advised of his rights. The government also has recordings of inculpatory conversations between Parahams and his co-defendants, and suggesting he was the ringleader of the scheme. On top of that, the government appears to have an abundance of documentary and electronic information matching the figures and names from the returns fraudulently filed with the IRS to figures and names contained on Parahams's computer, which he acknowledged to police he used to prepare tax returns. The government's evidence seems substantial.

Considering factor(g)(3)(A), related to the defendant's characteristics, the Court sees Parahams as a flight risk for the same reasons the Court cited in finding the consideration of detention appropriate in the first place. Beyond that, while the defendant did grow up and spend his

7

entire life in the South Bend area, he has no contact with three of his four children (the fourth is in the custody of Parahams's mother), and he has no meaningful employment that would keep him around. Nor does it appear that he owns a residence or other property in the community. The defendant's limited ties to the area do not offset his terrible track record on court supervision, or his motive to flee in this case. Considering factor (g)(3)(B), the Court notes that the arrest for this offense did, in fact, occur while the defendant was on probation for another crime. Factor (g)(4) is not applicable, as the Court is not considering dangerousness.

In short, the Court is convinced the defendant poses a risk of flight or non-appearance. The only remaining question is whether any condition or combination of conditions will reasonably assure his appearance, despite that risk. The defendant has suggested that electronic monitoring will adequately assure that the defendant is present in court when needed. He cites *United States v. O'Brien*, 895 F.2d 810, 815-16 (1st Cir. 1990), a case which extolled the effectiveness of electronic monitoring. But the Court is not convinced. Electronic monitoring might be enough to ensure the presence of a person who had shown more respect for, and compliance with, the law in the past, but Parahams's track record does not paint a picture of a man who is easily deterred from lawlessness. If he wants to flee – and the Court has laid out several reasons why it suspects he might – it is doubtful that an electronic bracelet or anklet will convince him otherwise. For one thing, he could find a way to remove it. For another, as Probation Officer Bucha noted at the hearing, the monitoring equipment generally sends a signal when its wearer travels outside of a preprogrammed range from the transmitter. But that does not mean it tracks the exact whereabouts of the wearer once he or she goes out of range. This court does not just want to know if and when Parahams flees – it wants him not to flee at all, and to be present in the courtroom as required.

Furthermore, the Court cannot say where it would place Parahams on electronic monitoring. The defense initially suggested his mother's house, but the government indicates that his mother was involved in the offense currently charged, and as a result that placement seems unwise. The defense next suggested the residence of a female "friend" who was seated in the gallery during the hearing, but the Court has no information about the woman or about why that placement would be likely to be successful.

Finally, defense counsel introduced evidence – specifically, a news clipping from a local media website on the night before Parahams was arrested – which tends to show that Parahams could have known federal agents were after him before he was caught, and yet he chose not to flee. [Defense Exhibit B]. Parahams's circumstances now are considerably different from his circumstances then. He undoubtedly has more knowledge now about the prison time he is likely facing, for example, and the time he has spent in confinement so far may have made him much less amenable to that possibility than he initially was. The fact that Parahams *might* have known he was in the authorities' crosshairs for a short time without fleeing does not convince the Court that he would not try to flee if released at this time. No condition or conditions of release will reasonably assure the defendant's continued presence, and he will remain detained pending trial. His motion for review [DE 40] is therefore **DENIED**.

SO ORDERED.

ENTERED:  February 25, 2013

    /s/ JON E. DEGUILIO
Judge
United States District Court